Daniel S. Robinson (SBN 244245)
Wesley K. Polischuk (SBN 254121)
Michael W. Olson (SBN 312857)
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone: (949) 720-1288
Fax: (949) 720-1292
drobinson@robinsonfirm.com
wpolischuk@robinsonfirm.com
molson@robinsonfirm.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| AMY DUNCAN, individually, and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      vs.<br><br>NORDSTROM, INC.; and DOES 1 through 10,<br><br>            Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Amy Duncan ("Plaintiff"), individually, and on behalf of the class defined below, brings this class action complaint against Nordstrom, Inc. ("Nordstrom") and DOES 1 through 10 (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.      On or around November 5, 2018, Nordstrom notified its current and former employees of a data breach that occurred on October 9, 2018 (the "Notice of Data Breach"), whereby the confidential, personal information of its current and former employees was improperly mishandled and made available to the public and unauthorized third parties (the "Data Breach").[1]  The personal information included names, Social Security numbers, payment card information, checking account and routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers (collectively, the "PII").[2]

2.      Although the Data Breach was identified on October 9, 2018, Nordstrom waited nearly one month to notify its current and former employees of the Data Breach.  In the Notice of Data Breach, the only information Nordstrom provided to its current and former employees is that it is "investigating an incident where a contract worker improperly handled some Nordstrom employee data.  This happened on October 9, 2018.  [Nordstrom's] Information Security team promptly discovered the incident that day, notified law enforcement and began a comprehensive investigation."[3]  Nordstrom also states that "[t]he contract worker who improperly handled this information no longer has any access to our systems, and [Nordstrom is] putting additional measures in place to help prevent this from happening again."[4]

3.      The Notice of Data Breach failed to adequately inform current and former employees how its contract worker mishandled the PII, why the contract

---

[1] *See* November 5, 2018 Notice of Data Breach, attached hereto as Exhibit 1.
[2] *Id.*
[3] *Id.*
[4] *Id.*

1

**CLASS ACTION COMPLAINT**

worker was ever provided access to the PII, why Nordstrom still maintained the PII of its former employees, and whether any additional unauthorized parties had access to the PII, preventing Nordstrom's current and former employees from fully appreciating the risks associated with the Data Breach, which involves sensitive information such as their Social Security numbers, payment card information, checking account and routing numbers, and insurance provider information.

4.     Also absent from the Notice of Data Breach is any explanation as to why Nordstrom waited one month to notify its current and former employees of the Data Breach, and why it allowed its employees to remain at risk of identity theft and fraud as a result of the Data Breach.

5.     The Data Breach occurred not only because Nordstrom failed to implement adequate security measures to safeguard its current and former employees' personal information, but because it willfully ignored *known* weaknesses in its data security.  Unauthorized parties, such as this contract worker, routinely attempt to gain access to and steal personal information from networks and information systems, especially from entities such as Nordstrom known to possess a large number of individuals' valuable personal and financial information.

6.     Armed with this personal information--which hackers can sell to other thieves or misuse themselves--thieves can commit a variety of crimes that harm victims of the data breach.  For instance, they can take out loans, mortgage property, open financial accounts, and open credit cards in a victim's name; use a victim's information to obtain government benefits or file fraudulent returns to obtain a tax refund; obtain a driver's license or identification card in a victim's name; gain employment in another person's name; or give false information to police during an arrest.

7.     As a result of Nordstrom's willful failure to prevent the Data Breach, Plaintiff and Class members are more susceptible to identity theft and have experienced, will continue to experience and will face an increased risk of financial

**CLASS ACTION COMPLAINT**

harms, in that they are at substantial risk of identity theft, fraud, and other harm because of the Data Breach—including the risk of bodily harm or death because of misdiagnosis or mistreatment as a result of medical identity theft or fraud.

## PARTIES

### Plaintiff Amy Duncan

8.     Plaintiff Amy N. Duncan is a resident of California and was a seasonal employee at Nordstrom located in Mission Viejo, California between April 2013 and August 2017.   On or about November 5, 2018, Plaintiff received the Notice of Data Breach from Nordstrom regarding the Data Breach.  As a result of the Data Breach, Plaintiff has spent many hours addressing issues arising from the Data Breach, including monitoring her credit cards and bank accounts for fraudulent activity. Because of the increased risk of identity theft and fraud resulting from the Data Breach, Plaintiff signed up for credit monitoring with LifeLock: Identity Theft Protection and is paying $ 9.99 per month.

### Defendant Nordstrom, Inc.

9.     Defendant Nordstrom, Inc. is incorporated in Washington, with its headquarters and principal place of business located at 1700 Seventh Ave, Seattle, WA, 98101.

### Unknown Defendants

10.     The true names and/or capacities, whether individual, corporate, partnership, associate or otherwise, of the Defendants herein designated as Does and/or Roes are unknown to Plaintiff at this time who, therefore, sues said Defendants by fictitious names.  Plaintiff alleges that each named Defendant herein designated as Does and/or Roes is negligently, willfully, contractually, or otherwise legally responsible for the events and happenings herein referred to and proximately caused damages to Plaintiffs as herein alleged.  Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Defendants when they have been ascertained and will further seek leave to join said Defendants in these

3

## CLASS ACTION COMPLAINT

proceedings.

11.    Plaintiff is informed and believe and thereon alleges that at all times mentioned herein, Does and/or Roes were agents, servants, employees, partners, distributors or joint ventures of each other and that in doing the acts herein alleged, were acting within the course and scope of said agency, employment, partnership, or joint venture. Each and every Defendant aforesaid was acting as a principal and was negligent or grossly negligent in the selection, hiring and training of each and every other Defendant or ratified the conduct of every other Defendant as an agent, servant, employee or joint venture.

## JURISDICTION AND VENUE

12.    This Court has diversity jurisdiction over this action based on the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5 million exclusive of interest and costs, and at least one class member is a citizen of a state different from Defendants.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants are corporations that do business in and are subject to personal jurisdiction in this District, regularly transacts business here, and some of the class members reside in this District.  In addition, the events giving rise to Plaintiff's causes of action arose, in part, in this District.

## FACTS

### A.    The Data Breach

14.    Nordstrom is a department store chain that operates approximately 380 stores in 40 states and believed to have over 75,000 current and former employees.

15.    On November 5, 2018, Nordstrom notified current and former employees that it experienced a data breach whereby a Nordstrom contract worker mishandled their confidential information.  The confidential information included names, Social Security numbers, payment card information, checking account and

**CLASS ACTION COMPLAINT**

routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers.

16.    Despite discovering the Data Breach on October 9, 2018, Nordstrom waited nearly one month to notify its current and former employees that their PII had been mishandled in a way that it may be further misused by unauthorized third parties.

17.    The notice, largely void of any detail that occurred, provided:

**What Happened?**
We are investigating an incident where a contract worker improperly handled some Nordstrom employee data. This happened on October 9, 2018. Our Information Security team promptly discovered the incident that day, notified law enforcement and began a comprehensive investigation.

**What Information Was Involved?**
No customer data was impacted. Employee information that was affected could include name, social security number, pay card number, checking account and routing number, insurance provider information, salary information, date of birth, address and phone number.

**What We Are Doing**
The contract worker who improperly handled this information no longer has any access to our systems, and we're putting additional measures in place to help prevent this from happening again. We have no evidence data was shared or used inappropriately.

**What You Can Do**
Out of an abundance of caution, we want to provide you with information and resources to help protect and monitor your information for any potential unauthorized activity.[5]

18.    As a result of the deficient notice, many current and former employees who received the Notice of Data Breach failed to fully appreciate the risks involved of becoming a victim of the Data Breach, especially a data breach that involves extremely confidential and sensitive information including, but not limited to, Social Security numbers, payment card information, checking account and routing numbers, and insurance provider information.

---

[5] *Id.*

**CLASS ACTION COMPLAINT**

**B.    Personally Identifiable Information ("PII")**

19.    PII is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners.

20.    PII is information that can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and biometric records.  This can be accomplished alone, or in combination with other personal or identifying information that is connected, or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.

21.    PII does not include only data that can be used to directly identify or contact an individual (e.g., name, e-mail address), or personal data that is especially sensitive (e.g., Social Security number, bank account number, payment card numbers).

22.    Although Nordstrom has claimed it does not believe the PII has been misused, it still encourages the affected personnel to "remain vigilant for incidents of fraud and identity theft by reviewing [their] account statements and monitoring [their] free credit reports."

23.    Given the nature of the Data Breach, it is foreseeable that the compromised PII will be used to access Plaintiff and the Class members' financial accounts, thereby providing access to additional PII or personal and sensitive information.  Therefore, the compromised PII in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways.  Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves.  Indeed, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[6]  For example, different

---

[6] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report                    35-38                    (Dec.                    2010)

**CLASS ACTION COMPLAINT**

PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual.

24. Further, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible. This is known as the "mosaic effect."[7]

25. Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts particularly when they have easily-decrypted passwords and security questions.

26. The PII Nordstrom exposed is of great value to hackers and cyber criminals and the data compromised in the Data Breach can be used in a variety of unlawful manners, including opening new credit and financial accounts in users' names, obtaining protected health information, and/or committing medical fraud.

27. Unfortunately for Plaintiff and Class members, a person whose PII has been compromised may not fully experience the effects of the breach for years to come:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[8]

28. Accordingly, Plaintiff and Class members will bear a heightened risk of injury for years to come. Identity theft is one such risk and occurs when an

---

<https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-bureau-consumer-protection-preliminary-ftc-staff-report-protecting-consumer/101201privacyreport.pdf> [as of June 24, 2017].
[7] Fed. Chief Information Officers Council, Recommendations for Standardized Implementation of Digital Privacy Controls (Dec. 2012) pp. 7-8.
[8] G.A.O., Personal Information: Data Breaches are Frequent, but Evidence of Resulting Identity Theft is Limited; However, the Full Extent is Unknown (June 2007) <http://www.gao.gov/assets/270/262904.html.> [as of June 24, 2017].

**CLASS ACTION COMPLAINT**

individuals' PII is used without his or her permission to commit fraud or other crimes.[9]

29.    According to the Federal Trade Commission, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[10]

30.    As a direct and proximate result of Nordstrom's reckless and negligent actions, inaction, and omissions, the resulting Data Breach, the unauthorized release and disclosure of Plaintiff's and Class members' PII, and Nordstrom's failure to properly and timely notify Plaintiff and Class members, Plaintiff and Class members are more susceptible to identity theft and have experienced, will continue to experience and will face an increased risk of experiencing the following injuries, *inter alia*:

   a. money and time expended to prevent, detect, contest, and repair identity theft, fraud, and/or other unauthorized uses of personal information;

   b. money and time lost as a result of fraudulent access to and use of their financial accounts;

   c. loss of use of and access to their financial accounts and/or credit;

   d. money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

   e. impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

[9] Fed. Trade Comm'n, Taking Charge: What To Do If Your Identity Is Stolen (April 2013) <https://www.consumer.ftc.gov/articles/pdf-0014-identity-theft.pdf> [as of June 24, 2017].
[10] Fed. Trade Comm'n, Protecting Consumer Privacy in an Era of Rapid Change (March 2012) <https://www.ftc.gov/sites/default/files/documents/reports/federal-trade-commission-report-protecting-consumer-privacy-era-rapid-change-recommendations/120326privacyreport.pdf> [as of June 24, 2017].

8

**CLASS ACTION COMPLAINT**

f.  lowered credit scores resulting from credit inquiries following fraudulent activities;

g.  money, including fees charged in some states, and time spent placing fraud alerts and security freezes on their credit records;

h.  costs and lost time obtaining credit reports in order to monitor their credit records;

i.  anticipated future costs from the purchase of credit monitoring and/or identity theft protection services;

j.  costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

k.  money and time expended to ameliorate the consequences of the filing of fraudulent tax returns;

l.  lost opportunity costs and loss of productivity from efforts to mitigate and address the adverse effects of the Data Breach including, but not limited to, efforts to research how to prevent, detect, contest, and recover from misuse of their personal information;

m.  loss of the opportunity to control how their personal information is used; and

n.  continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Nordstrom fails to undertake appropriate, legally required steps to protect the personal information in its possession.

31.  The risks associated with identity theft are serious.  "While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record.  Some

9

**CLASS ACTION COMPLAINT**

consumers victimized by identity theft may lose out on job opportunities, or denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit."[11]

32.    Further, criminals often trade stolen PII on the "cyber black-market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23(b)(1), (b)(2), (b)(3), and (c)(4).

### A.    Nationwide Class

34.    Plaintiff brings all claims on behalf of a proposed nationwide class ("Nationwide Class"), defined as follows:

> *All natural persons and entities in the United States whose personal identifying information was mishandled in the data breach announced by Nordstrom in November 2018.*

35.    **Numerosity:** The Nationwide Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Nationwide Class includes over 75,000 current and former employees whose PII was compromised, stolen, and/or disclosed during the Data Breach. The parties will be able to identify the exact size of the class through discovery and Nordstrom's own documents.

36.    **Commonality:** There are numerous questions of law and fact common to Plaintiff and the Nationwide Class including, but not limited to, the following:

- whether Defendants engaged in the wrongful conduct alleged herein;
- whether Defendants owed a duty to Plaintiff and members of the Nationwide Class to adequately protect their personal information;
- whether Defendants breached their duties to protect the personal

---

[11] True Identity Protection: Identity Theft Overview, ID Watchdog <http://www.idwatchdog.com/tikia//pdfs/Identity-Theft-Overview.pdf> [as of Sept. 23, 2016].

**CLASS ACTION COMPLAINT**

information of Plaintiff and Nationwide Class members;

- whether Nordstrom knew or should have known that its data security systems, policies, procedures, and practices were vulnerable to attack;

- whether Plaintiff and Nationwide Class members suffered legally cognizable damages as a result of Defendants' conduct, including increased risk of identity theft and loss of value of PII;

- whether Defendants violated state consumer protection statutes; and

- whether Plaintiff and Nationwide Class members are entitled to equitable relief including injunctive relief.

37.    **Typicality:** Plaintiff's claims are typical of the claims of the Nationwide Class members. Plaintiff, like all proposed Nationwide Class members, had their personal information compromised in the Data Breach.

38.    **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Nationwide Class. Plaintiff has no interests that are averse to, or in conflict with, the Nationwide Class members. There are no claims or defenses that are unique to Plaintiff. Likewise, Plaintiff has retained counsel experienced in class action and complex litigation, including data breach litigation, and have sufficient resources to prosecute this action vigorously.

39.    **Predominance:** The proposed action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Nationwide Class predominate over any questions which may affect only individual Nationwide Class members.

40.    **Superiority:** The proposed action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the

**CLASS ACTION COMPLAINT**

rights of each class member.

41.     Absent a class action, the majority Nationwide Class members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

42.     **Risks of Prosecuting Separate Actions:** Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Nordstrom. Nordstrom continues to maintain the PII of Nationwide Class members and other individuals, and varying adjudications could establish incompatible standards with respect to its duty to protect individuals' personal information; and whether the injuries suffered by Nationwide Class members are legally cognizable, among others. Prosecution of separate action by individual class members would also create a risk of individual adjudications that would be dispositive of the interests of other class members not parties to the individual adjudications, or substantially impair or impede the ability of class members to protect their interests.

43.     **Injunctive Relief:** In addition, Defendants have acted and/or refused to act on grounds that apply generally to the Nationwide Class, making injunctive and/or declaratory relief appropriate with respect to the class under Federal Rule of Civil Procedure 23(b)(2). Defendants continue to (1) maintain the personally identifiable information of Nationwide Class members, (2) fail to adequately protect their personally identifiable information, and (3) violate their rights under numerous state consumer protection laws and other claims alleged herein.

/ / /

/ / /

/ / /

**CLASS ACTION COMPLAINT**

# CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

### (On Behalf of the Nationwide Class Against Defendants)

44.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

45.     Plaintiff brings this claim on behalf of herself and the Nationwide Class.

46.     Plaintiff and Nationwide Class members were required to provide Defendants with certain PII in connection with their relationship to Nordstrom. Defendants collected and stored this information including their names, Social Security numbers, payment card information, checking account and routing numbers, insurance provider information, salary information, dates of birth, addresses, and phone numbers.

47.     Nordstrom had a duty to Plaintiff and Nationwide Class members to safeguard and protect their PII.

48.     Defendants assumed a duty of care to use reasonable means to secure and safeguard this PII, to prevent its disclosure, to guard it from theft, and to detect any attempted or actual breach of its systems.

49.     Defendants have full knowledge about the sensitivity of Plaintiff and Nationwide Class members' PII, as well as the type of harm that would occur if such PII was wrongfully disclosed.

50.     Defendants have a duty to use ordinary care in activities from which harm might be reasonably anticipated in connection with user PII data.

51.     Defendants breached their duty of care by failing to secure and safeguard the PII of Plaintiff and Nationwide Class members.  Defendants negligently stored and/or maintained its data security systems.

52.     Further, Defendants by and through their above negligent actions and/or inactions, breached their duties to Plaintiff and Nationwide Class members by failing

**CLASS ACTION COMPLAINT**

to design, adopt, implement, control, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff's and Nationwide Class members' PII within their possession, custody and control.

53.    Plaintiff and the other Nationwide Class members have suffered harm as a result of Defendants' negligence.  These victims' loss of control over the compromised PII subjects each of them to a greatly enhanced risk of identity theft, fraud, and myriad other types of fraud and theft stemming from either use of the compromised information, or access to their user accounts.

54.    It was reasonably foreseeable – in that Defendants knew or should have known – that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Nationwide Class members' PII would result in its release and disclosure to unauthorized third parties who, in turn wrongfully used such PII, or disseminated it to other fraudsters for their wrongful use and for no lawful purpose.

55.    But for Defendants' negligent and wrongful breach of their responsibilities and duties owed to Plaintiff and Nationwide Class members, their PII would not have been compromised.

56.    As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Nationwide Class members' PII, they have incurred (and will continue to incur) the above-referenced economic damages, and other actual injury and harm for which they are entitled to compensation.  Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence/negligent misrepresentation.

57.    Plaintiff and Nationwide Class members are entitled to injunctive relief as well as actual and punitive damages.

/ / /

/ / /

14

**CLASS ACTION COMPLAINT**

# CAUSES OF ACTION

## COUNT II

### Violation of California Consumers Legal
### Remedies Act, California Civil Code § 1750, *et seq.*

(On Behalf of the Nationwide Class Against Defendants)

58. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

59. This cause of action is brought pursuant to the California Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.* This cause of action does not seek monetary damages at this time but is limited solely to injunctive relief. Plaintiff will later amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice required by California Civil Code § 1782.

60. Plaintiff and Nationwide Class Members are "consumers," as the term is defined by California Civil Code § 1761(d).

61. Plaintiff, Nationwide Class members, and Defendants have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

62. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant was likely to deceive consumers.

63. Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

64. Defendants violated this provision by representing that they took appropriate measures to protect Plaintiff's and the Nationwide Class members' PII. Additionally, Defendants improperly handled, stored, or protected either unencrypted or partially encrypted data.

65. As a result, Plaintiff and Nationwide Class members were induced to

15

**CLASS ACTION COMPLAINT**

enter into a relationship with Defendants and provide their PII.

66. As a result of engaging in such conduct, Defendants have violated Civil Code § 1770.

67. Pursuant to Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendants from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

68. Plaintiff and Nationwide Class members suffered injuries caused by Defendants' misrepresentations, because they provided their PII believing that Defendants would adequately protect this information.

69. Plaintiff and Nationwide Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

70. The unfair and deceptive acts and practices of Defendants, as described above, present a serious threat to Plaintiff and members of the Nationwide Class.

## CAUSES OF ACTION

### COUNT III

**Violation of Unfair Competition Law,**

**California Business and Professional Code Section 17200, *et seq*.**

(On Behalf of the Nationwide Class Against Defendants)

71. Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

72. Plaintiff brings this claim on behalf of herself and the Nationwide Class.

73. The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as defined by the UCL and relevant case law.

74. By reason of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized disclosure of Plaintiff

**CLASS ACTION COMPLAINT**

and Nationwide Class members' PII, Defendants engaged in unlawful, unfair and fraudulent practices within the meaning of the UCL.

75.    Defendants' business practices as alleged herein are unfair because they offend established public policy and are immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, in that the private and confidential PII of consumers has been compromised for all to see, use, or otherwise exploit.

76.    Defendants' practices were unlawful and in violation of Civil Code § 1798 *et seq.* because Defendants failed to take reasonable measures to protect Plaintiff's and the Nationwide Class members' PII.

77.    Defendants' business practices as alleged herein are fraudulent because they are likely to deceive consumers into believing that the PII they provide to Defendants will remain private and secure, when in fact it was not private and secure.

78.    Plaintiff and the Nationwide Class members suffered (and continue to suffer) injury in fact and lost money or property as a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions including, *inter alia*, the unauthorized release and disclosure of their PII.

79.    Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff's and Nationwide Class members' PII also constitute "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq.*, in that Defendants' conduct was substantially injurious to Plaintiff and Nationwide Class members, offensive to public policy, immoral, unethical, oppressive and unscrupulous; the gravity of Defendants' conduct outweighs any alleged benefits attributable to such conduct.

80.    But for Defendants' misrepresentations and omissions, Plaintiff and Nationwide Class members would not have provided their PII to Defendants or would have insisted that their PII be more securely protected.

**CLASS ACTION COMPLAINT**

81.     As a direct and proximate result of Defendants' above-described wrongful actions, inactions, and omissions, the resulting Data Breach, and the unauthorized release and disclosure of Plaintiff and Nationwide Class members' PII, they have been injured: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants; (3) the compromise, publication, and/or theft of their PII; and (4) costs associated with monitoring their PII, amongst other things.

82.     Plaintiff takes upon herself enforcement of the laws violated by Defendants in connection with the reckless and negligent disclosure of PII.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees and costs from the recovery in this action.  Therefore, an award of attorneys' fees and costs is appropriate under California Code of Civil Procedure § 1021.5.

## CAUSES OF ACTION

### COUNT IV

### Violation of California Customer Records
### Act, California Civil Code § 1798.80 et.seq.

(On Behalf of the Nationwide Class Against Defendants)

83.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

84.     "[T]o ensure that personal information about California residents is protected," Civil Code section 1798.81.5 requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

85.     Defendants own, maintain, and license personal information, within the meaning of section 1798.81.5, about Plaintiff and the Nationwide Class.

**CLASS ACTION COMPLAINT**

86.     Defendants violated Civil Code section 1798.81.5 by failing to implement reasonable measures to protect Plaintiff and Nationwide Class members' personal information.

87.     As a direct and proximate result of Defendants' violations of section 1798.81.5 of the California Civil Code, the Data Breach described above occurred.

88.     As a direct and proximate result of Defendants' violations of section 1798.81.5 of the California Civil Code, Plaintiff and the Nationwide Class members suffered the damages described above including, but not limited to, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personally identifying information.

89.     Plaintiff and the Nationwide Class members seek relief under section 1798.84 of the California Civil Code including, but not limited to, actual damages, to be proven at trial, and injunctive relief.

## CAUSES OF ACTION

### COUNT V

### Breach of Implied Contract

(On Behalf of the Nationwide Class Against Defendants)

90.     Plaintiff re-alleges and incorporates by reference all preceding factual allegations as though fully set forth herein.

91.     Plaintiff brings this claim on behalf of herself and the Nationwide Class.

92.     Defendants offered employment to Plaintiff and Nationwide Class members in exchange for a job, compensation and other employment benefits. To work for Defendants, receive compensation and other employment benefits, Defendants required Plaintiff and Nationwide Class members to provide their PII, including names, addresses, Social Security numbers, medical information, and other personal information.

93.     Defendants had an implied duty of good faith to ensure that the PII of

**CLASS ACTION COMPLAINT**

Plaintiff and Nationwide Class members in their possession was used only for purposes of employment, payment of wages and other employment benefits provided by Defendants.

94.    Defendants were therefore required to reasonably safeguard and protect the PII of Plaintiff and Nationwide Class members from unauthorized uses, and to timely and accurately notify Plaintiff and Nationwide Class members if their PII was compromised so that Plaintiff and Nationwide Class members could act to mitigate the harm caused by the loss of opportunity to control how their PII is used.

95.    Plaintiff and Nationwide Class members would not have provided and entrusted their PII to Defendants had they known Defendants' database was not secure, would be exposed to a contract worker, and Defendants had no intention of performing their part of the bargain which was to protect their PII from unauthorized third parties.

96.    As a proximate and direct result of Defendants' breach of their implied contracts with Plaintiff and Nationwide Class members, they have suffered and will suffer injury including, but not necessarily limited, to: (1) the loss of the opportunity to control how their PII is used; (2) the diminution in the value and/or use of their PII entrusted to Defendants for purposes of employment and with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (3) the compromise, publication, and/or theft of their PII and the PII of their family members and designated beneficiaries of employment-related benefits through Defendants; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from identity and health care/medical data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged

**CLASS ACTION COMPLAINT**

due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (7) unauthorized use of compromised PII to open new financial and/or health care or medical accounts; (8) tax fraud and/or other unauthorized charges to financial, health care or medical accounts and associated lack of access to funds while proper information is confirmed and corrected; (9) the continued risk to their PII, and the PII of their family members and designated beneficiaries of employment-related benefits through Defendants, which remain in Defendants' possession and are subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in their possession; and (10) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of the Nationwide Class members, their families, and their designated beneficiaries of employment-related benefits through Defendants.

## RELIEF REQUESTED

Plaintiff, on behalf of herself and members of the Nationwide Class, request the Court enter judgment against Defendants as follows:

A.  An order certifying this action as a class action under Federal Rule of Civil Procedure 23, defining the Nationwide Class requested herein, appointing the undersigned as Class Counsel, and finding that Plaintiff is a proper representative of the Nationwide Class requested herein;

B.  Injunctive relief requiring Defendants to (1) strengthen their data security systems that maintain personally identifying information to comply with the applicable state laws alleged herein (including, but not limited to, the California Customer Records Act) and best practices under industry standards; (2) engage third-party auditors and internal personnel to conduct security testing and audits on Defendants' systems on a periodic basis; (3) promptly correct any problems or issues detected

**CLASS ACTION COMPLAINT**

by such audits and testing; and (4) routinely and continually conduct training to inform internal security personnel how to prevent, identify and contain a breach, and how to appropriately respond;

C.   An order requiring Defendant to pay all costs associated with class notice and administration of class-wide relief;

D.   An award to Plaintiff and all Nationwide Class members of compensatory, consequential, incidental, and statutory damages, restitution, and disgorgement, in an amount to be determined at trial;

E.   An award to Plaintiff and all Nationwide Class members of additional credit monitoring and identity theft protection services beyond the package Nordstrom is currently offering;

F.   An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.   An order requiring Defendants to pay pre-judgment and post-judgment interest, as provided by law or equity; and

F.   Such other or further relief as the Court may allow.

Dated: November 28, 2018                    Respectfully submitted,

**ROBINSON CALCAGNIE, INC.**

 /s/ Daniel S. Robinson
Daniel S. Robinson
drobinson@robinsonfirm.com
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone:  (949) 720-1288

22

**CLASS ACTION COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues in this action so triable of right.

Dated: November 28, 2018

Respectfully submitted,

**ROBINSON CALCAGNIE, INC.**

/s/ Daniel S. Robinson
Daniel S. Robinson
drobinson@robinsonfirm.com
19 Corporate Plaza Dr.
Newport Beach, CA 92660
Telephone:  (949) 720-1288

**CLASS ACTION COMPLAINT**

# EXHIBIT 1



# NORDSTROM

Processing Center ● P.O. BOX 141578 ● Austin, TX 78714

00061522 AADC 0.405 T 163
AMY N DUNCAN
3025 BRILLANTE
SAN CLEMENTE CA 92673-3809

November 5, 2018

### NOTICE OF DATA BREACH

Dear Amy Duncan:

One of the responsibilities we have as a company is to uphold the privacy of current and former employees' personal information. We are investigating an incident where a contract worker improperly handled some Nordstrom employee data. We want to update you on what happened and what action we're taking to help protect your personal data. We take this situation seriously and on behalf of the Executive Team, we sincerely apologize.

**What Happened?**
We are investigating an incident where a contract worker improperly handled some Nordstrom employee data. This happened on October 9, 2018. Our Information Security team promptly discovered the incident that day, notified law enforcement and began a comprehensive investigation.

**What Information Was Involved?**
No customer data was impacted. Employee information that was affected could include name, social security number, pay card number, checking account and routing number, insurance provider information, salary information, date of birth, address and phone number.

**What We Are Doing**
The contract worker who improperly handled this information no longer has any access to our systems, and we're putting additional measures in place to help prevent this from happening again. We have no evidence data was shared or used inappropriately.

**What You Can Do**
Out of an abundance of caution, we want to provide you with information and resources to help protect and monitor your information for any potential unauthorized activity.

To provide an added level of assurance and protection, we're offering you free Identity Repair and Fraud Alerts with Credit Monitoring services for 24 months. The Identity Repair services start today. These services are delivered through a company we've selected and worked with called AllClear ID. The attached Reference Guide provides information on these services and registering for AllClear ID's Fraud Alerts with Credit Monitoring services.

Although we have no indication your data was misused, we encourage you to remain vigilant for incidents of fraud and identity theft by reviewing your account statements and monitoring your free credit reports. You also are entitled under U.S. law to one free credit report annually from each of the three nationwide consumer reporting agencies. The attached Reference Guide includes information about ordering your free credit report and recommendations by the U.S. Federal Trade Commission on the protection of personal information.



01-02-4

**For More Information**
For questions about this incident and the free Identity Repair and Fraud Alerts with Credit Monitoring Services, please contact AllClear ID. You can reach AllClear ID representatives Monday-Saturday from 6:00 a.m. – 6:00 p.m. Pacific Time at 855-309-1722.

Again, we hope you'll accept our sincere apologies for the concern or difficulty this situation may cause.

Sincerely,

Blake Nordstrom
Co-President, Nordstrom Inc.

**Reference Guide**

We encourage you to take the following steps:

**Order Your Free Credit Report.** To order your free credit report, visit www.annualcreditreport.com, call toll-free at
1-877-322-8228, or complete the Annual Credit Report Request Form on the U.S. Federal Trade Commission's ("FTC")
website at www.consumer.ftc.gov and mail it to Annual Credit Report Request Service, P.O. Box 105281, Atlanta, GA
30348-5281. The three consumer reporting agencies provide free annual credit reports only through the website, toll-free
number or request form.  Review your credit report carefully, and notify the consumer reporting agencies of any
inaccuracies in your information, and of contents you do not understand.

**Register for AllClear Identity Repair & Fraud Alerts with Credit Monitoring.** We have arranged with AllClear ID to help you
protect your identity and your credit information for twenty-four months at no cost to you.

**AllClear Identity Repair:** This service is automatically available to you with no enrollment required. If a problem arises, simply
call 855-309-1722 and a dedicated investigator will help recover financial losses, and help restore your credit and identity.

**AllClear Fraud Alerts with Credit Monitoring:** This service offers the ability to set, renew, and remove 90-day fraud alerts on
your credit file to help protect you from credit fraud. In addition, it provides credit monitoring services, a once annual credit
score and credit report, and a $1 million identity theft insurance policy. To enroll in the fraud alerts with credit monitoring
service, you will need to provide your personal information to AllClear ID. You may sign up online at enroll.allclearid.com or by
phone by calling 855-309-1722 and using the following redemption code: 1517678577.

Please note: Following enrollment, additional steps are required by you in order to activate your phone alerts and fraud alerts,
and to pull your credit score and credit file. Additional steps may also be required in order to activate your monitoring options.

**Report Incidents.** If you detect any unauthorized transactions in a financial account, promptly notify your payment card
company or financial institution. If you detect any incident of identity theft or fraud, promptly report the incident to law
enforcement, the FTC and your state Attorney General. If you believe your identity has been stolen, the FTC recommends
that you close the accounts that you have confirmed or believe have been tampered with or opened fraudulently. Use the
FTC's Identity Theft Report (available at www.ftc.gov/idtheft) when you dispute new unauthorized accounts.

You can contact the FTC to learn more about how to protect yourself from becoming a victim of identity theft and how to
repair identity theft:

Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue, NW, Washington, DC 20580,
1-877-IDTHEFT (438-4338) www.ftc.gov/idtheft/.

**Consider Placing a Fraud Alert on Your Credit File.** To protect yourself from possible identity theft, consider placing a fraud
alert on your credit file. A fraud alert helps protect you against the possibility of an identity thief opening new credit
accounts in your name. When a merchant checks the credit history of someone applying for credit, the merchant gets a
notice that the applicant may be the victim of identity theft. The alert notifies the merchant to take steps to verify the
identity of the applicant. You can place a fraud alert on your credit report by calling any one of the toll-free numbers
provided below. You will reach an automated telephone system that allows you to flag your file with a fraud alert at all
three consumer reporting agencies. For more information on fraud alerts, you also may contact the FTC as described above.

**Equifax:** P.O. Box 740241, Atlanta, Georgia 30374-0241, 1-800-525-6285, www.equifax.com
**Experian:** P.O. Box 9554, Allen, TX 75013, 1-888-397-3742, www.experian.com
**TransUnion:** P.O. Box 2000, Chester, PA 19022, 1-800-680-7289, www.transunion.com

**Consider Placing a Security Freeze on Your Credit File.** You may wish to place a "security freeze" (also known as a "credit
freeze") on your credit file. A security freeze is designed to prevent potential creditors from accessing your credit file at the
consumer reporting agencies without your consent. *Unlike a fraud alert, you must place a security freeze on your credit file
at each consumer reporting agency individually.* For more information on security freezes, you may contact the three
nationwide consumer reporting agencies or the FTC as described above. As the instructions for establishing a security
freeze differ from state to state, please contact the three nationwide consumer reporting agencies to find out more
information.


02-02-4

The consumer reporting agencies may require identification information such as your full name, Social Security number, date of birth, current and prior addresses, government identification card, and proof of your current address, to honor your request.

**For Iowa Residents.** You may contact law enforcement or the Iowa Attorney General's Office to report suspected incidents of identity theft. This office can be reached at: Office of the Attorney General of Iowa, Hoover State Office Building, 1305 E. Walnut Street Des Moines, IA 50319, (515) 281-5164 www.iowaattorneygeneral.gov.

**For Maryland Residents.** You can obtain information from the Maryland Office of the Attorney General about steps you can take to avoid identity theft. You may contact the Maryland Attorney General at: Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, Baltimore, MD 21202, (888) 743-0023 (toll-free in Maryland), (410) 576-6300, www.oag.state.md.us.

**For Massachusetts Residents.** You have the right to obtain a police report and request a security freeze as described above. The consumer reporting agencies may require that you provide certain personal information (such as your name, Social Security number, date of birth, and address) and proper identification (such as a copy of a government-issued ID card and a bill or statement) prior to honoring your request for a security freeze.

**For New Mexico Residents.** You have rights under the federal Fair Credit Reporting Act ("FCRA"). These include, among others, the right to know what is in your file; to dispute incomplete or inaccurate information; and to have consumer reporting agencies correct or delete inaccurate, incomplete, or unverifiable information. For more information about the FCRA, please visit https://www.consumer.ftc.gov/articles/pdf-0096-fair-credit-reporting-act.pdf or www.ftc.gov.

**For North Carolina Residents.** You can obtain information from the North Carolina Attorney General's Office about preventing identity theft. You can contact the North Carolina Attorney General at: North Carolina Attorney General's Office, 9001 Mail Service Center, Raleigh, NC 27699-9001, (877) 566-7226 (toll-free in North Carolina) (919) 716-6400, www.ncdoj.gov.

**For Oregon Residents.** We encourage you to report suspected identity theft to the Oregon Attorney General at: Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301-4096, (877) 877-9392 (toll-free in Oregon), (503) 378-4400, http://www.doj.state.or.us.

**For Rhode Island Residents.** You may obtain information about preventing and avoiding identity theft from the Rhode Island Office of the Attorney General at: Rhode Island Office of the Attorney General, Consumer Protection Unit, 150 South Main Street, Providence, RI 02903, (401)-274-4400, http://www.riag.ri.gov.

You have the right to obtain a police report and request a security freeze as described above. The consumer reporting agencies may require that you provide certain personal information (such as your name, Social Security number, date of birth, and address) and proper identification (such as a copy of a government-issued ID card and a bill or statement) prior to honoring your request for a security freeze.